PERLEY v. SCHUBERT.

(Supreme Court, Appellate Division, First Department.  November 15, 1907.)

1. DAMAGES—LIQUIDATED DAMAGES OR PENALTY.
    In determining whether a stipulation in a contract for the payment of
    a specified sum in case of a breach provides for liquidated damages or for
    a penalty, the intention of the parties, ascertained from the language of
    the contract and the surrounding circumstances, must be considered.
        [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 154–
    156.]

2. CONTRACTS—CONSTRUCTION—TIME AS ESSENCE OF CONTRACT.
    A contract binding a theatrical manager to furnish on May 1st of each
    year routes, covering theaters under his control, for the production by
    another for 20 consecutive weeks from September 15th of such plays as
    he might select, and requiring the latter to notify the former on or before
    July 1st of his acceptance of the routes and to give notice prior to Sep-
    tember 1st of the number of attractions intended to be produced, so that
    the time set apart for him might otherwise be disposed of did not make
    time of the essence, and a failure to submit the routes on May 1st was
    not a breach.
        [Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§
    938–943.]

3. SAME—PLACE OF PERFORMANCE.
    Where a contract binding a theatrical manager to furnish to another
    routes covering theaters under his control did not specify the place of
    delivery of the routes, the place of delivery was at the office of the
    manager.
        [Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§
    929–935.]

Appeal from Trial Term.

Action by Frank L. Perley against Leo Schubert.  From a judg-
ment for plaintiff, and from an order denying a motion for a new trial,
defendant appeals.  Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE,
SCOTT, and LAMBERT, JJ.

Benjamin N. Cardozo (Wm. Klein, on the brief), for appellant.
Josiah Canter (Franklin Bien, on the brief), for respondent.

CLARKE, J.  This is an action to recover $25,000 as liquidated dam-
ages for breach of contract.  On July 28, 1905, the plaintiff and the
defendant, theatrical managers, entered into an agreement in writing
which by its terms was to commence on September 1, 1905, and con-
tinue for 5 years, with provisions for renewal for an additional 5
years.  The contract is voluminous, covering some 16 pages of the
printed record and containing 17 separately numbered paragraphs.  Its
many stipulations or covenants are of varying degrees of importance.
It provides that the defendant should submit to and set aside for the
plaintiff, prior to the 1st of May in each year during said term, for the
production of whatever attractions the plaintiff might desire, six good
routes covering all theaters the bookings of which were under the con-
trol of the defendant or of his brother, Jacob J. Schubert, or of any
corporation or partnership in which they or either of them were inter-
ested; that the defendant should deliver to the plaintiff, within one

106 N.Y.S.—38

week after receiving written notice of the name of each play and of the plaintiff's intent to present the same, contracts in due form granting and securing to the plaintiff such time or engagements for the presentation of his attractions in the Lyric Theater and the Casino in the city of New York, and in all the theaters referred to in the contract, each route to be at least for 20 consecutive weeks, three of them to begin not later than September 15th in each year, and three about October 15th, in each year, and to be upon sharing terms in accordance with an annexed schedule; that if, after October 15th, the plaintiff desired and requested a route beginning later than that date, the defendant should book it wherever time in the theaters desired by the plaintiff was not actually contracted for; that after the submission of the routes on or prior to May 1st the plaintiff should notify the defendant in writing, on or prior to July 1st, either of his acceptance or of his declination of all of any part of each or all of said routes, and should give notice in writing prior to September 1st what time he would not require; that, should the plaintiff not have six attractions, he would notify the defendant on or before September 1st in each year of the number of attractions which he desired to produce, so that the time set aside for him might be disposed of by the defendant; that the terms on which the attractions should play at the different theaters should be in accordance with a schedule annexed thereto; that the plaintiff should have the right to purchase an interest in all future musical and dramatic plays to be produced by the defendant during the term of the agreement, up to a one-half interest, upon giving prescribed notice and upon prescribed terms of payment; that, should the defendant be called upon by any one to make a production of any musical production, opera, or play, without risk to the defendant, he should refer such person to the plaintiff and enter into an agreement with the plaintiff for a division of the profits; that the plaintiff should have time for his productions in each season, or in each year, at the Casino and Lyric Theaters in the city of New York, and such other theaters as the defendant might control in the city of New York, in addition to those on the road more specifically described; that the defendant should be constituted the booking agent of the plaintiff for the purpose of booking his attractions, and that the plaintiff should not book or attempt to book any attraction, except through the defendant; that, should the defendant dispose of the theaters owned or controlled by him, he would do so only subject to the terms of the agreement; that no production should be made by the plaintiff in addition to the six routes set apart for him except at theaters owned or controlled by the defendant; that the form of the contract to be used in booking should be the form thereto annexed; that if, through introduction, or by the influence of the plaintiff, any theater should become affiliated with the Schubert enterprises, or should the booking of any theater be procured through the efforts or introduction made by the plaintiff, the plaintiff should have one-half of all income accruing from affiliation of said theater and the booking of time therein for so long a time as the arrangement made with the said theater should continue; that the plaintiff should have the right, if he so desired, to purchase from the defendant any proportion, not to exceed one-half, of the de-

fendant's interest in any future musical or dramatic play, during the term of the agreement, upon payment of a proportionate part of the actual cost.    By the fifteenth subdivision of the agreement the following covenant was made in respect to the remedies available to the plaintiff in the event of the defendant's default:

"Fifteenth. In addition to any remedy which the party of the second part may have by virtue thereof, the parties hereto expressly agree that, should the party of the first part fail to fully perform all the covenants and conditions of this agreement on his part to be performed, then and in that event the damages which said party of the second part may sustain by reason thereof are hereby assessed at the sum of twenty-five thousand dollars ($25,000), which said sum the party of the first part agrees to pay; this not being a penalty, but agreed upon as liquidated damages for the breach of the within contract."

The plaintiff brings this action to recover damages because the defendant, as he alleges, failed to submit six routes to him on or before May 1, 1906. He does not claim that he ever demanded the routes. On June 2, 1906, he gave the defendant the following notice:

"Take notice that, you having failed to carry out many of the conditions of the contract made and entered into by and between us in writing, dated July 28, 1905, and especially having failed to submit to me and set aside six first-class routes prior to the 1st day of May, 1906, as provided for by the second clause of said contract, and more than 30 days having elapsed since said time, you are hereby notified that the said contract has been terminated by your failure to carry out the same, and I hereby demand of you the payment of the sum of $25,000 forthwith as liquidated damages as provided for by the fifteenth clause of said contract."

Immediately on the receipt of this notice the defendant wrote the plaintiff as follows:

"June 2, 1906.

"My dear Frank: Yours of June 2d to hand and contents noted. I am really surprised at the contents thereof. I have written you several letters with reference to your routes and have telephoned you over a dozen times, but seem to get no information whatsoever from your office. I simply desire to reiterate, what I have heretofore written you, that your routes have been awaiting your approval for the last four weeks. Come over and see me with reference to the matter. With kindest regards, I am,

"Yours truly,                              Leo Schubert."

The plaintiff did not reply to this letter, but commenced this action. On behalf of the defendant it was proved that the routes had been made up for the plaintiff's use, and were in the defendant's office, ready to be delivered to him, if he called, before May 1, 1906, and the routes so prepared were marked for identification. There was testimony to the effect that as early as April 10, 1906, the defendant wrote the plaintiff that the routes had already been set apart for him, and asked him to call and go over them. The plaintiff denies that he received this letter. It was shown by the testimony of the defendant's attorney, which, however, the plaintiff contradicted, that in April, 1906, said attorney spoke to the plaintiff over the telephone about the routes, and asked why he did not come over and fix the routes at the office, and that the plaintiff said he would be over very shortly. The jury returned a verdict for the plaintiff for $25,000, and from the judgment entered thereon this appeal is taken.

The briefs of counsel upon both sides have elaborately discussed the

question whether the $25,000 provided to be paid by the fifteenth clause of the agreement is to be considered as liquidated damages or as a penalty, and have cited a multitude of cases. All of these cases and many more have been examined by us. From them has been deduced one rule, at least, in which they all agree, and about which there can be no doubt, and that is that in the construction of such provisions the actual intention of the parties, so far as it can reasonably and fairly be ascertained from the language of the contract and from the nature of the surrounding circumstances, is to be considered; in other words, that each case is to be considered in the light of its own facts. Examining this case as made, we find it unnecessary to enter into a discussion of this vexed question or to add to a legal literature where reconcilement of all the cases has been abandoned as impossible, because it seems to us clear that the plaintiff has not made out a breach of the contract upon the defendant's part. There being no breach, it is of no importance whether the sum to be paid upon a breach be liquidated damages or a penalty. The fifteenth clause, quoted supra, preserved all the ordinary remedies, both legal and equitable, which the plaintiff might have under the contract, or any of the provisions thereof, and in addition provided a distinct remedy for a failure by the defendant to perform all the covenants and conditions of this agreement by him to be performed, and fixed the damages therefor at $25,000. It is not claimed that at the time this suit was brought the defendant had failed to perform all the covenants and conditions of the agreement. The utmost that is claimed is that he had failed to perform one of the covenants or conditions. It is claimed that that failure broke the entire contract, and that $25,000 immediately became due, without any proof of damage. . This covenant was that the defendant should submit to and set aside for the plaintiff, prior to the 1st day of May, six good routes.

In construing this instrument it becomes important to determine whether that date was of the essence of the contract. The plaintiff's claim goes to the extent of asserting that if these six routes had been submitted and set aside one day late, on the 2d day of May, still the contract would have been breached, and the $25,000 recoverable. Is such a claim reasonable? Was it within the contemplation of the parties and the fair intendment of the contract? This contract was between theatrical managers. It had to do with theatrical business. By the terms of the contract each of these routes were to be for at least 20 consecutive weeks, three to begin not later than September 15th and three about October 15th. After the submission of the routes on or prior to May 1st, the contract provided that the plaintiff should notify in writing the defendant, on or prior to July 1st, either his acceptance or declination of all or any part of each or all of said routes, and notify the defendant prior to the 1st of September what time he would not require. If the plaintiff did not have six attractions, he should notify the defendant, on or before September 1st, of the number of attractions he desired to produce, so that the time set apart for him might be disposed of by the defendant. It is evident, it seems to us, that under such conditions submission of the routes on the 1st of May was not of the essence of the contract, and that a failure so to submit did not

per se breach the contract. The plaintiff had two months thereafter in which to consider and pass upon the routes, he had two more months in which to notify the defendant of what time he would not require, and the season was not to begin for three of the routes until the 15th of September and for the rest until the 15th of October. There is not one word in this voluminous agreement which supports the proposition that time, namely, May 1st, was of the essence of the contract. The offices of the two parties were in the same city, within three blocks of each other. No demand was ever made by the plaintiff upon the defendant. The defendant never repudiated the contract, but had set aside the routes and had the prepared charts thereof ready in his office for submission to the plaintiff. Upon the very day on which the plaintiff notified him that he had breached the contract, the defendant wrote, denying such breach either in fact or intention, and told defendant that the routes were and had been ready for his inspection, and asked him to call and look them over. At this time, a whole month of the time provided for the plaintiff to examine and notify of his acceptance or rejection still remained. Under such circumstances, to permit a recovery of the large sum of $25,000 as upon a technical breach is to do violence to all sense of fair play, is not required by the law, and will not be sanctioned by the court.

We leave out of consideration the testimony on the defendant's part that prior to May 1st the plaintiff had been notified by letter and telephone that the routes were ready and awaiting his inspection. We hold that, under this contract and upon this proof, time was not of the essence of this contract, and the defendant had not breached it, and that, as he had not failed to perform all the covenants and conditions of the agreement by him to be performed, the plaintiff was not entitled to recover. We think, further, that under this contract the place of delivery of these routes, no place for delivery being therein mentioned, was at the office of the defendant, and that, even if time could be considered as the essence of the contract, the routes having been set aside and ready for submission at said office prior to the 1st of May, there was no breach. This record impresses us as indicating a far greater desire upon the part of the plaintiff to entrap the defendant into the forfeiture of $25,000 than to carry out a fair contract. He evidently prefers a breach to a performance. The defendant did not repudiate the contract. He complied with its terms.

The plaintiff failed to establish a cause of action, and the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.