## FEHLINGER v. BOOS.

(Supreme Court, Special Term, New York County.   June 23, 1908.)

1. Pleading (§ 217*)—Demurrer to Reply—Opening Record.
  On demurrer to the sufficiency of special defenses in the reply to a counterclaim, the sufficiency of the counterclaim may be considered upon its attack by plaintiff.
  [Ed. Note.—For other cases, see Pleading, Dec. Dig. § 217.*]

2. Mechanics' Liens (§ 272*) — Enforcement — Pleading — Sufficiency of Counterclaim.
  In proceedings to foreclose a mechanic's lien, where a counterclaim set up the contract, which provided that plaintiff should begin performance thereof upon notice in writing of the vacation of the premises by the tenants, an allegation that plaintiff commenced work on a given day presupposes that defendant gave notice of the vacation by the tenants, and an allegation of such notice would be superfluous.
  [Ed. Note.—For other cases, see Mechanics' Liehs, Dec. Dig. § 272.*]

3. Damages (§ 80*)—Liquidated Damages and Penalties.
  If no damages are sustained from breach of a contract, a provision therein for liquidated damages will be regarded as a penalty and unenforceable.
  [Ed. Note.—For other cases, see Damages, Cent. Dig. § 170;  Dec. Dig. § 80.*]

4. Damages (§ 76*)—Liquidated Damages and Penalties.
  Each case is to be considered in the light of its own facts in determining whether a provision in a contract for damages in case of a breach is for liquidated damages or a penalty.
  [Ed. Note.—For other cases, see Damages, Cent. Dig. § 154;  Dec. Dig. § 76.*]

5. Mechanics' Liens (§ 272*)—Enforcement—Pleading—Counterclaim—Sufficiency.
  In mechanic's lien foreclosure proceedings, where a counterclaim for liquidated damages for failure to complete the work within the contract time made the contract an integral part of the counterclaim, and in the contract it was expressly agreed that defendant would suffer for delay in completion, and that it was impossible exactly to determine the loss thereby sustained, and the nature of the contract was such as necessarily to indicate that delay would result in loss, it being a contract to remodel a building, which tenants would have to vacate, the counterclaim sufficiently alleged damage.
  [Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 272.*]

6. Mechanics' Liens (§ 274*)—Enforcement—Defenses to Counterclaim—Sufficiency.
  In mechanic's lien foreclosure proceedings, a plea setting up a separate defense to a counterclaim for liquidated damages for failure to complete the work within a certain time after commencing as provided by the contract, alleging as reasons for delay that it was the understanding of the parties when the contract was made that the tenants of the premises would vacate shortly after October 4th, so that work could be commenced when the weather was mild, but that plaintiff was unable to commence work before the middle of December, when he was hindered by the weather, that he was required to do extra work, that there were deviations in the plans and a failure of defendant to inspect, but not setting out facts as to the respects in which the plans were altered, or what the extra work was, or what inspection was delayed, and not alleging any time as to the delays, nor alleging facts bringing the defenses within a provision of the contract, requiring extensions of time to be in

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

writing and written notice from defendant to temporarily suspend work, nor facts from which it could be found that the giving of notice or of written extensions was either waived or rendered unnecessary, was insufficient.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 274.*]

7. MECHANICS' LIENS (§ 274*)—ENFORCEMENT—DEFENSES TO COUNTERCLAIM—SUFFICIENCY.

A plea setting up representations of defendant, as an inducing cause for plaintiff stipulating in the contract to complete the work within a specified time after commenced that defendant would procure the premises to be vacated by the tenants, so that plaintiff might commence work within a week or two from the date of the contract (the contract not providing the date for commencing the work), but not alleging fraud in the misrepresentations, mutual mistake, nor rescission, was not sufficient as against the plain provisions of the contract which its effect would be to vary.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 274.*]

Action by Nicholas Fehlinger against Jacob A. Boos. Demurrers to reply sustained, with leave to plead over.

Herman & Hirschman (A. W. Weil, of counsel), for plaintiff.
J. Henry Esser (Leon Leroy Mott, of counsel), for defendant.

GREENBAUM, J. This being a demurrer by defendant to the sufficiency of the first and second separate defenses of plaintiff's reply to the counterclaim set up in the answer of the defendant, the sufficiency of the alleged counterclaim properly may be considered upon its attack by the plaintiff. The action is brought to foreclose a mechanic's lien upon an alleged unpaid balance due to plaintiff under a building contract and for extra work. The counterclaim is for liquidated damages by reason of the failure on plaintiff's part to complete within the time fixed in the contract. The contract contains very explicit provisions as to the time of performance, which was to be deemed in its essence, and, in view of the questions presented, the following paragraphs of the contract will be quoted:

"(6) That the time of performance is of the essence of this contract, and the party of the second part shall begin said performance upon notice in writing of the vacation of said premises by the present tenants at once, and he shall fully complete the same to the satisfaction of the party of the first part in thirty-five (35) days from the time said party of the second part actually commences said work, and the party of the second part shall perform with all possible dispatch and without delay and without unreasonably interfering with or retarding any other parties connected with the structure forming the subject of this contract, and shall afford to the party of the first part and representatives every opportunity of inspecting the work as it progresses, and all labor or material furnished or proposed to be furnished for the same.

"(7) That, in view of the impossibility of exactly determining the loss which the party of the first part will reasonably suffer if the party of the second part does not complete this contract within the time stipulated, it is hereby mutually understood and agreed that the party of the second part shall pay to the party of the first part, by way of liquidated damages and not by way of penalty, the sum of five ($5) dollars per day for each and every day that full performance in every particular remains unfinished after the time stipulated for completion has elapsed; and the party of the first part may retain and apply toward such payment sufficient moneys, due or to become due the party of the second part under this contract, to satisfy said liquidated

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

damages, and if all of the said moneys are insufficient to satisfy said damages, then the said party of the second part shall be responsible for and make payment of the deficiency to the party of the first part. And it is further agreed by the party of the first part that he will pay to the party of the second part in addition to the contract price the sum of five ($5) dollars per day for each and every day that the work to be done under this contract is completed under the time specified herein by said party of the second part shall be fully performed and completed.

"(8) That no extensions or reductions of time for any cause shall be made for the performance of this contract unless previously agreed to in writing setting forth the number of days, by the party of the first part, and by no other person and in no other manner. In case of such extensions or reductions the time for completion of this contract shall be as of the original time plus the days of extension or minus the days of reduction, and shall be subject to all provisions of this contract. At any time after the execution of this contract the party of the second part shall temporarily suspend performance thereof, in part or in whole, if so requested by the party of the first part, acting by his architect or personally by written notice served on the foreman in charge of the work, or personally, or by registered letter, or by leaving said notice at the business address or residence of the party of the second part, but such suspension shall not be more than five days during the term of this contract. In consideration of and by way of full compensation for any such suspension the party of the second part shall be allowed an extension of time, as before referred to, for as many days as equal the days of requested suspension; said allowance shall accompany said notice of suspension."

So much reliance seems to have been placed upon the time of performance that the contract further provided, with some elaboration of detail, in paragraph 14, that, in case of any delay occasioned by any unforeseen or unavoidable occurrence or accident, the time for completion shall be extended in such cases only upon the presentation of a claim therefor in writing to the defendant "within twenty days of the occurrence of such delay." And in paragraph 16, which refers to alterations, omissions, deviations from plans and extra work, it is provided that they shall not be deemed "to extend or vary the time limited for the performance of the contract unless an extension or reduction of time agreed to in writing" is had. Plaintiff argues that the failure of defendant to allege the giving of notice in writing of the vacation of the premises by the tenants and the omission of defendant specifically to allege that he suffered damage by the delay are fatal defects. The counterclaim alleges the date upon which plaintiff commenced work under the contract, and alleges the delay in completion. The agreement, which is a part of the counterclaim, expressly provides that the plaintiff shall fully complete in 35 days "from the time said party of the second part actually commenced said work." An allegation that plaintiff commenced work on a given day presupposes that defendant gave notice of the vacation of the premises by the tenants, and an allegation of such notice would be superfluous. Considering the pleading so far as the question of damages is concerned, it may be assumed that, if no damages are sustained, the provision of a contract for liquidated damages will be regarded as a penalty and therefore unenforceable (Dunn v. Morgenthau, 73 App. Div. 147, 76 N. Y. Supp. 827, affirmed 175 N. Y. 518, 67 N. E. 1081, and it may also be assumed that "each case is to be considered in the light of its own facts in determining whether the provision is for liquidated damages or a penalty" (Perley v. Shubert, 121 App. Div. 786, 790, 106

N. Y. Supp. 593). But the contract between the parties is made an integral part of the counterclaim, and we there find that it is expressly agreed that the defendant will suffer for delay in completion, and that it is impossible exactly to determine the loss thereby sustained. The nature of the contract is such as necessarily to indicate that delay must result in loss. Under such circumstances, I think the counterclaim sufficiently alleges damages.

Coming now to the demurrer to the separate defenses to the counterclaim, I am of opinion that it is well taken. The first defense sets up that, when the contract was made, it was in the contemplation of the parties that the tenants in the building to be altered by the plaintiff would vacate shortly after October 4th, when the weather was mild, and that as matter of fact plaintiff was not able to commence work until the middle of December, when he was hindered and delayed by the "cold, damp and wet weather." He also alleges as additional reasons for his delay that he was required to perform a large amount of extra work and furnish extra materials, that there were deviations in the plans, and that there was a failure on defendant's part to inspect the work. There are no facts set forth as to the respects in which the plans were altered or deviated from or what the extra work was or what inspection was delayed, and no time is alleged as to any of the delays. The delays may have been insignificant or might constitute a partial defense, in which event the pleading should have set up the matters referred to as a "partial defense." The reply further fails to allege facts bringing the defenses within the provisions of the contract requiring written extensions or notice, as the case may be, to be given, or a state of facts from which it may be found that the giving of notice or of obtaining written extensions was either waived or rendered unnecessary. Under the second separate defense, the reply sets up representations on the part of the defendant as an inducing cause for plaintiff's stipulating in such contract to complete the work in 35 days "that the defendant would procure the premises to be vacated by the tenants so that plaintiff might commence work within a week or two from the date of the contract." Then follow allegations in reliance upon said representations and reiterations of the allegations in the first defense as to the effects of winter weather in causing the delay. There are no allegations of fraud in the misrepresentations nor of mutual mistake, nor is there any allegation of rescission. As already shown, the contract was unusually detailed as to the rights and obligations of the parties in the matter of the element of time, and the effect of plaintiff's plea would be to vary its terms. If the integrity of written contracts is to be upheld, or if their binding force with respect to matters carefully considered by the parties is not to be ignored, no such pleas as are set forth under the separate defenses should be deemed available.

The demurrers are sustained, with costs to the defendant, and with leave to plaintiff to plead over to the counterclaim upon payment of costs.